FILED
SEP 26 2016
CLERK, US DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

NORFOLK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:16cr 134 |
| | ) | |
| ROBERT SMITH, III, | ) | 18 U.S.C. § 1341 |
| | ) | Mail Fraud |
| Defendant. | ) | (Count 1) |
| | ) | |
| | ) | 18 U.S.C. §§ 981 & 982 |
| | ) | Criminal Forfeiture |

CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

COUNT ONE

1. The International Longshoremen's Association is the largest union of maritime workers in North America.

2. International Longshoremen's Association Local 970 ("Local 970") is a local union whose members provide qualified labor to the Port of Virginia. Currently, Local 970 has approximately 610 members. Local 970's jurisdiction covers union workers in Hampton Roads Southside who work at the Norfolk International Terminals and the Portsmouth Marine Terminal. The union's office is located at 3300 East Princess Anne Road in Norfolk, Virginia.

3. On or about April 1, 1995, ROBERT SMITH, III became a member of Local 970. Shortly thereafter, in or about May, 1995, the union members elected SMITH to serve on the Executive Board as a Trustee. In or about October 2002, following the retirement of a union officer, SMITH was appointed to serve as the Business Agent/Financial Secretary for Local 970.

Three months later, the union members elected SMITH to serve as the Business Agent/Financial Secretary. Local 970 held elections every three years, and the union members repeatedly elected SMITH to serve as the Business Agent/Financial Secretary. As a result, SMITH served as the Business Agent/Financial Secretary for Local 970 from approximately October 2002 through April 2016.

4. As Business Agent, SMITH managed the daily business matters for Local 970. As such, SMITH acted as a representative for membership, negotiated contracts and handled jobsite problems. As the Financial Secretary, SMITH managed the Local 970's bank accounts, paid bills and owed a fiduciary duty to the union to manage appropriately the union's finances.

5. From in or about March, 2006 through in or about April, 2016, the exact dates being unknown, in the Eastern District of Virginia and elsewhere, defendant ROBERT SMITH, III, knowingly and intentionally devised and executed a scheme and artifice to defraud and obtain money and property by materially false pretenses, representations, and promises. This scheme and artifice operated in substance as follows:

### THE OBJECT OF THE SCHEME AND ARTIFICE TO DEFRAUD

6. The object of the scheme and artifice to defraud was for SMITH to wrongfully obtain and misappropriate money and to retain misappropriated money and property owned and controlled by Local 970 by:

(a) Holding himself out to the members of Local 970 as an honest Business Agent / Financial Secretary who always conducted legitimate business transactions on behalf of the union;

(b) Embezzling union funds from Local 970 bank accounts that were held under his custody and control; and

(c) Concealing the embezzlement by failing to file required Department of Labor reports on the status of union funds.

## THE EXECUTION OF THE SCHEME AND ARTIFICE TO DEFRAUD

7. At all relevant times, Local 970's operating account was located at SunTrust Bank. In or about 2005, SMITH determined that the union needed to open a second account at a separate FDIC-insured financial institution to protect union funds. At the time, SMITH was concerned because the balance in the union's bank account typically exceeded the then-FDIC insurance limit of $100,000.00. As a result, SMITH opened a separate union account at Wachovia Bank which later became Wells Fargo ("Wells Fargo account"). After SMITH opened the account, the FDIC limit was raised to $250,000.00, but the Wells Fargo account was not closed. Initially, SMITH and another Local 970 Executive Officer were signers on the account; however, the other Executive Officer eventually retired leaving SMITH as the only signatory on the account.

8. Local 970's assets consisted of new member initiation fees and member dues. New member initiation fees were $1,500.00 and were typically paid through certified check or money order.

9. A checkoff system is where an employer regularly deducts a portion of an employee's wages to pay union dues. For Local 970, checkoffs consisted of a 4% authorized deduction from members' pay that were used to pay local, regional and national union dues. Approximately 2% of the union dues went the regional and national union. As a result, Local

3

970 typically received approximately 2% of a union member's straight time hourly rate. The employers withheld the union dues from the union members' pay and typically sent checkoff checks via the U.S. mail to the Local 970 office on either a monthly or quarterly basis.

10. As the Business Agent/Financial Secretary, SMITH received new member initiation fees and dues checks. SMITH had the fiduciary responsibility to deposit these funds into Local 970's bank accounts, and to use those funds solely for the benefit of the union.

11. In or about the March 6, 2006, SMITH made his first unauthorized transaction from the Wells Fargo account. SMITH used $7,488.75 in funds from Local 970's Wells Fargo account to cover his personal credit card bill. After this initial transaction, SMITH regularly used union funds from the Wells Fargo account to pay his personal credit card bills.

12. For the next ten years, SMITH regularly deposited member initiation fees and dues checks into the Local 970's Wells Fargo account and embezzled those funds for his own personal use.

13. On or about October 2014, Wells Fargo issued a check card for the Local 970 account. From October 8, 2014 through April 14, 2016, defendant used the debit card for personal purposes.

14. As a result of SMITH's conduct, Local 970 suffered substantial losses.

15. To conceal the embezzlement, for the past ten years, SMITH never filed the requisite Department of Labor, Office of Labor-Management Standards, Form LM-2. As the Business Agent, SMITH was required to file, on an annual basis, the Form LM-2 which is a financial report detailing the total annual receipts received by the union and disbursements paid by the union during its fiscal year. Department of Labor agents repeatedly contacted SMITH

regarding the need to file the LM-2 forms. In response, SMITH lied to Department of Labor representatives claiming that he was working on the requisite forms when, in fact, he had no intention of filing them.

16. On or about July 7, 2014, in the Eastern District of Virginia and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, defendant ROBERT SMITH, III, knowingly caused to be sent and delivered to him by United States Mail, the following matter: CP&O checkoff check number 1702 written to ILA Local 970 in the amount of $33,763.58 for union dues retained from union members' pay and sent to the union at address 3300 East Princess Anne Road in Norfolk, Virginia. After receiving this check, SMITH deposited it into the Local 970's Wells Fargo account and converted the funds to his personal use.

(In violation of Title 18, United States Code, Section 1341).

## FORFEITURE

1. ROBERT SMITH, III, the defendant, if convicted of the violation alleged in Count One of the Criminal Information, shall forfeit to the United States, as part of the sentencing pursuant to Federal Rule of Criminal Procedure 32.2:

    a. Respecting Count One, any property, real or personal, which constitutes or is derived from proceeds traceable to such violations, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c);

    b. Any property belonging to the defendant, up to the value of the property subject to forfeiture, if any property subject to forfeiture: (a) cannot be located upon the exercise of due diligence; (b) has been transferred to, sold to, or deposited with a third person; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

2. The property subject to forfeiture under paragraph 1 includes, but is not limited to, the following property:

A sum of money of at least $1,072,668.30, which represents the proceeds of the charged offense, which, upon entry of an order of forfeiture, shall constitute a monetary judgment against the defendant.

(All in accordance with Title 18, United States Code, Section 981(a)(1)(C) as incorporated by Title 28, United States Code, Section 2461(c); and Title 21, United States Code, Section 853(p)).

*United States v. Robert Smith, III*
Criminal No. 2:16cr 134

                    Dana J. Boente
                    United States Attorney

By: *[signature]*
      Melissa E. O'Boyle
      Assistant United States Attorney
      Virginia State Bar No. 47449
      Attorney for the United States
      United States Attorney's Office
      101 West Main Street, Suite 8000
      Norfolk, VA 23510
      Office Number - 757-441-6331
      Facsimile Number - 757-441-6689
      E-Mail Address – melissa.oboyle@usdoj.gov